**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**GREGORY JACKSON,**

|  |  |  |
|---|---|---|
| | **Petitioner,** | **9:06-CV-0057** |
| **v.** | | **(GTS)** |

**ROBERT E. ERCOLE, Superintendent,**

| | |
|---|---|
| | **Respondent.** |
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PETITIONER:**

**GREGORY JACKSON**
Petitioner, *pro se*

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**          **FREDERICK H. WEN, Esq.**
Office of the Attorney General          Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**GLENN T. SUDDABY**
**United States District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.  <u>Background</u>**[1]

    **A.  <u>State Court Proceedings</u>**

      The state court records reflect that on November 3, 2000, Detective Joseph Severance

("Det. Severance") of the Albany Police Department was awakened by the sound of the doorbell

of his house in Colonie, New York.  *See* Transcript of Trial of Gregory Jackson (6/4/01) ("Trial

---

    [1]  The background information contained in this Memorandum-Decision and Order is
derived from the state court records supplied to this Court.

Tr.") at p. 45.  By the time Det. Severance answered the door, there was no one there, however through his side window, he saw an individual with a portable cd player in his hand, ringing the doorbell of his neighbor's house.  *Id.* at pp. 44-46.  Det. Severance saw the individual two more times; in the middle of the street in front of a neighbor's house, and then again walking across the officer's lawn.  *Id.* at pp. 46-48.  When it appeared as though the man was once again heading toward Det. Severance's home, he went to retrieve his gun.  *Id.* at p. 48.  He then proceeded to the back of his house where he saw the individual on the deck of the home.  *Id.* at pp. 48-49.  Around that time, Det. Severance "heard a crash," and "caught out of the corner of [his] eye the same individual standing on the deck" whom he had just seen.  The man then ran off the deck and fled the scene.  *Id.* at pp. 48-49.

Det. Severance called 911 on his telephone and provided members of the Colonie Police Department with a description of the perpetrator.  *Id.* at p. 49.  The officer described the suspect as a black male in his twenties, wearing a "reddish-cranberry hooded sweatshirt" and dark jeans, 5' 10" tall, "tight hair like corn rolls," with a "Walkman in his hands and ... earphones up in his ear[s]."  *Id.* at p. 47.

Colonie Police Officer David Messmer was one of the officers to whom Det. Severance had provided the description of the perpetrator.  *Id.* at p. 97.  Officer Messmer broadcast a description of the suspect on his police radio, and personally provided the description to Investigator Jonathan M. Teale, whom Officer Messmer came upon while the two were on patrol. *Id.* at p. 98.  Approximately two hours after the attempted burglary,  Inv. Teale stopped and questioned an individual who later proved to be petitioner, *pro se* Gregory Jackson, because the individual generally matched the description of the suspect.  *Id.* at p. 104.  After calling for

2

backup, Inv. Teale asked Jackson from where he had come and what he was doing in Colonie, to which he responded that he was from Albany and was "out for a walk." *Id.* at pp. 121-22. Inv. Teale observed that Jackson "appeared nervous" and "somewhat agitated" because he "was sweating profusely" even though "[i]t was a cool day." *Id.* at pp. 122-23.[2] When Jackson was patted down for weapons, a portable cd player was discovered in his pocket. *Id.* at pp. 170-72.

Det. Severance was contacted and brought to the location where Jackson was being detained. *Id.* at p. 53. Upon arriving at the scene, Det. Severance identified Jackson as the individual whom the detective had seen earlier that day attempting to enter the detective's residence. *Id.* at pp. 53-54.[3] Jackson was then arrested and taken to the police station. *Id.* at pp. 106-07. While there, Investigator Philip D'Angelo observed Jackson kicking two dollar bills under a desk. *Id.* at pp. 127-29. When asked by the officer what Jackson was doing, he replied that he did not know what the bills were. *Id.* at p. 129.

While Jackson was at the police station, law enforcement agents received a report of a burglary committed at the home of Lynne Vella in Colonie, New York. *Id.* at p. 151. The victim stated that she had arrived home from work at 3:30 that afternoon and noticed that the door jamb to her home had been damaged. *Id.* at pp. 179-80. She then noticed that her bedroom was in

---

[2] Inv. Teale also noticed that Jackson "s[m]elled like he had been drinking an alcoholic beverage." Trial Tr. at p. 123.

[3] At the time of the show-up identification, Det. Severance stated that Jackson was wearing the same jeans he had been wearing while near the detective's residence, but that Jackson was wearing a different shirt, a "plaidish[-] colored top ... versus the burgundy sweater, the hooded one." Trial Tr. at pp. 54-55. The detective conceded on cross-examination that the suspect he had described to law enforcement agents was several inches taller than Jackson, however the detective explained that his backyard deck was not at the same level as his house, with the ground "even lower than" the deck. *Id.* at pp. 87-88.

"disarray," "jewelry [was] all over [her] bed," dresser drawers had been opened and an empty champagne bottle was on her dresser. *Id.* at p. 181. She later discovered a red sweat shirt underneath her bed, as well as a Walkman in the house, neither of which belonged to anyone who lived in her home. *Id.* at pp. 183-84. At trial, Vella identified the plaid, fleece shirt that Jackson was wearing at the time of his arrest, the portable cd player that had been recovered from him at that time, as well as the five, two dollar bills Jackson had earlier kicked under a desk in the police station as items that belonged to her but were missing from her house after the burglary. *Id.* at pp. 191-93.

On November 17, 2000, an Albany County grand jury charged Jackson with attempted burglary in the second degree (relating to Det. Severance's residence), burglary in the second degree (relating to Vella's residence) and fifth degree criminal possession of a stolen property. *See* Indictment. On May 2, 2001, Albany County Court Judge Dan Lamont presided over a pretrial suppression hearing requested by Jackson. *See* Transcript of Suppression Hearing (5/2/01) ("Suppression Tr."). Judge Lamont subsequently denied in part and granted in part Jackson's suppression application. *See* Decision/Order of Judge Lamont (5/24/01) ("May, 2001 Order"). Jackson was thereafter tried before a jury in Albany County Court on the charges in the Indictment, with Judge Lamont presiding. At the conclusion of that trial, the jury declared that it was deadlocked on the attempted burglary charge, however it found Jackson guilty of the second degree burglary of Vella's dwelling, as well as the criminal possession of stolen property charge. Trial Tr. at pp. 415-19.

On August 22, 2001, Jackson appeared before Acting Albany County Court Judge Richard Giardino for sentencing. At that time, he was sentenced, as a persistent violent felon, to an

indeterminate term of twenty years to life in prison for the second degree burglary conviction, and a concurrent, determinate term of one year for his fifth degree criminal possession of stolen property conviction. *See* Transcript of Sentencing of Gregory Jackson (8/22/01) at pp. 17-18.

Jackson appealed his conviction and sentence to the New York State Supreme Court Appellate Division, Third Department. In that appeal, he contended that: i) the show-up identification procedure was constitutionally tainted; ii) the evidence adduced at trial was legally insufficient to sustain the second degree burglary conviction; and iii) the imposed sentence was harsh and excessive. *See* Appellate Brief on Appeal. Jackson thereafter filed a *pro se* supplemental brief, arguing therein that: i) he was illegally detained and arrested without probable cause; and ii) in light of his unlawful arrest, the court erred in admitting into evidence the "unattenuated fruits" that were seized at the time of his arrest. *See Pro Se* Appellate Brief. The District Attorney filed a brief in opposition to the appeal, to which Jackson filed a *pro se* reply brief.

In its decision dated December 4, 2003, the Appellate Division unanimously affirmed Jackson's conviction and sentence. *People v. Jackson*, 2 A.D.3d 893 (3d Dep't 2003). Jackson sought leave to appeal that decision from New York's Court of Appeals, however in a certificate dated February 24, 2004, that leave application was denied. *People v. Jackson*, 1 N.Y.3d 629 (2004).

On October 21, 2004, Jackson filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. In that application, he alleged that he received the ineffective assistance of trial counsel. *See* CPL § 440.10 Motion (10/21/04) (Dkt. No. 13) ("CPL Motion"). In that request, Jackson specifically argued, *inter alia*, that his

5

counsel wrongfully:  i) refused to allow Jackson to testify at the pretrial *Wade* hearing[4] as to his true physical description, which he asserts is materially different from the description that Det. Severance provided to law enforcement agents; and ii) failed to utilize materials obtained through discovery to effectively cross-examine the prosecution's witnesses at trial.  *See* CPL Motion.  On March 15, 2005, Judge Giardino denied that application without a hearing.  *See People v. Jackson* (Alby Cty. Ct. Mar. 15, 2005) ("March, 2005 Order").  On April 6, 2005, Jackson moved for permission to appeal that Order, however on May 19, 2005, that request was denied by the Third Department.  *People v. Jackson*, No. 16053 (3d Dep't May 19, 2005).

On July 8, 2005, Jackson filed a *pro se* motion seeking a writ of error *coram nobis*, claiming therein that both trial and appellate counsel were ineffective.  *See Coram Nobis* Application (7/8/05) ("*Coram Nobis* Application").  With respect to trial counsel, Jackson asserted that such counsel was ineffective because counsel:  i) failed to raise a *Lypka* challenge[5] which claimed that the description of Jackson that was provided to law enforcement agents over the police radio was hearsay evidence that was inadmissible at trial; and ii) did not offer sufficient proof regarding Jackson's actual, physical appearance at the suppression hearing, which would have established that the identification testimony was inadmissible at trial.  *See Coram Nobis* Application at pp. 8-20.  He also asserted that appellate counsel rendered ineffective assistance because he neglected to argue on appeal that Jackson received the ineffective assistance of trial

---

[4] *United States v. Wade*, 388 U.S. 218 (1967).  The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive.  *See Blas v. Herbert*, No. 02 Civ.6257, 2003 WL 22480093, at *3 n.2 (S.D.N.Y. Oct. 31, 2003) (citing *Wade*).

[5] *People v. Lypka,* 36 N.Y.2d 210 (1975).

counsel and instead asserted weaker claims in his appeal. *Id.* at pp. 20-34. On August 17, 2005, the Appellate Division denied Jackson's application. *See People v. Jackson*, No. 16289 (3d Dep't Aug. 17, 2005) ("August, 2005 Order"). Jackson sought leave to appeal that order from New York's Court of Appeals, however that court denied Jackson's leave application on December 2, 2005. *See People v. Jackson*, slip op. at 1 (Dec. 2, 2005).

      **B.**    <u>**This Action**</u>

      Jackson commenced the present action, *pro se*, seeking a writ of habeas corpus on January 12, 2006. In his petition, Jackson claims that: i) he was illegally detained without probable cause on November 3, 2000; ii) the *Wade* show-up identification procedure was unduly suggestive and constitutionally tainted; iii) his conviction was based on legally insufficient evidence; iv) he received the ineffective assistance of trial counsel because counsel: (a) failed to assert a *Lypka* challenge at the suppression hearing; (b) did not introduce evidence at the *Wade* hearing which accurately described Jackson's appearance; and (c) failed to ensure that exculpatory evidence available to trial counsel was heard by the jury; and v) his appellate counsel rendered ineffective assistance because he failed to assert an ineffective assistance of trial counsel claim. *See* Petition at pp. 5A-8B.

      On July 19, 2006, the Attorney General for the State of New York, acting on respondent's behalf, filed a Memorandum of Law in Opposition to Jackson's application. Dkt. No. 9 ("Resp. Mem."). On September 11, 2006, Jackson filed a Traverse (Dkt. No. 11), as well as an Amended Traverse (Dkt. No. 14), in further support of his application.

      By Order dated September 17, 2008, Chief United States District Judge Norman A. Mordue reassigned this case to the undersigned, which is now before this Court for disposition.

*See* Dkt. No. 16; *see also*, General Order No. 32.

## II.     Discussion

### A.     Ground One

Jackson's initial ground for relief argues that his "stop and detention" and subsequent

arrest on November 3, 2000 was unlawful.  *See* Petition at pp. 5A -5C.

A claim challenging the legality of a stop and detention arises out of the Fourth

Amendment to the United States Constitution.  *E.g. United States v. McCargo*, 464 F.3d 192, 196

(2d Cir. 2006).  A claim that the police lacked probable cause to arrest an individual is similarly

rooted in that Amendment.  *See Rodriguez v. Zon*, No. 01-CV-2036, 2004 WL 1752418, at *7

(E.D.N.Y. Aug. 5, 2004); *McPherson v. Greiner*, No. 02 CIV.2726, 2003 WL 22405449, at *16

(S.D.N.Y. Oct. 22, 2003).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court determined that "where the

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494 (footnote

omitted); *see also Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *Capellan v. Riley*, 975 F.2d 67,

70 (2d Cir. 1992) (citing *Stone*); *Morales v. Walsh*, No. 02-CV-6045, 2003 WL 23185770, at *15

(E.D.N.Y. Oct. 30, 2003) ("*Stone v. Powell* applies to all Fourth Amendment claims – including

claims of arrest without probable cause – and regardless of the nature of the evidence that the

defendant is seeking to suppress").

The Second Circuit has noted that review of Fourth Amendment claims in federal habeas

petitions may only be undertaken in one of two instances:  a) if the state has provided no

corrective procedures at all to redress the alleged Fourth Amendment violations; or b) if the state

provided a corrective mechanism, but the petitioner was precluded from using that mechanism

because of an unconscionable breakdown in the underlying process.  *Capellan*, 975 F.2d at 70

(citation omitted); *see also James v. Marshall*, No. CV-05-1992, 2007 WL 3232513, at *9

(E.D.N.Y. Oct. 31, 2007) (citing *Capellan*); *Hickey v. Conway*, No. 03-CV-350, 2005 WL

1660115, at *4 (N.D.N.Y. July 6, 2005) (Scullin, C.J.) (citing *Capellan*).

New York State has provided an opportunity for defendants to fully and fairly litigate

Fourth Amendment claims.  *See* CPL § 710; *Capellan*, 975 F.2d at 70 n.1; *Jackson v. Lacy*, 74

F.Supp.2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.).  Jackson clearly availed himself of this

opportunity – as noted above, Judge Lamont conducted a pretrial hearing relating to the

suppression motion filed by Jackson, and that court thereafter concluded that "the police were

authorized to detain [Jackson] until probable cause for his arrest was established by the victim's

identification."  *See* May, 2001 Order at pp. 9-10; *see also Jackson*, 2 A.D.3d at 895.

Petitioner claims that he is entitled to habeas intervention on this claim because an

"unconscionable breakdown" occurred in the state courts below.  *E.g.*, Petition, Ground One;

Amended Traverse at pp. 2-8.  He specifically claims that the state courts erred in allowing the

identification testimony into evidence because Det. Severance's description of the suspect:  i) did

not refer to a beard; ii) misstated the manner in which Jackson had styled his hair; iii) did not

accurately refer to Jackson's age; iv) characterized the perpetrator as being significantly taller than

Jackson; and v) stated that the suspect was wearing a red jacket.  *See* Petition at p. 5A.

To establish that an unconscionable breakdown occurred in the state courts in conjunction

with a Fourth Amendment claim, a petitioner must prove that "no state court ... conducted a

reasoned method of inquiry into relevant questions of fact and law or any inquiry at all into the Fourth Amendment claim." *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 549 (E.D.N.Y. 1999) (internal quotation and citation omitted); *see also Smith v. Pearlman*, 01-CV-5835, 2003 WL 21738602, at *2 (E.D.N.Y. July 15, 2003) (citing *Taylor*); *Senor v. Greiner*, 00-CV-5673, 2002 WL 31102612, at *11 (E.D.N.Y. Sept. 18, 2002); *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y. 1987).

Nothing in the transcript of the suppression hearing suggests that defense counsel was unable to adequately argue in favor of Jackson's suppression application, or that Judge Lamont did not pursue a reasoned method of inquiry in considering the factual and legal questions raised by Jackson in that motion. Moreover, the Third Department afforded Jackson's appellate claim regarding this issue due consideration. *See Jackson*, 2 A.D.3d at 895-96. Although Jackson plainly disagrees with the factual findings and legal determinations of the state courts regarding this challenge, a mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in state's corrective process." *Capellan*, 975 F.2d at 72; *see also Pena v. State of New York*, No. 04 CIV. 9499, 2008 WL 4067339, at *9 (S.D.N.Y. Aug. 26, 2008) (citing *Capellan*) (other citations omitted).

Since Jackson has not demonstrated that an unconscionable breakdown occurred in the state courts below regarding this issue, the Court denies Jackson's initial ground for relief. *Stone*, 428 U.S. at 494; *see Wallace*, 549 U.S. at 395 n.5; *Capellan*, 975 F.2d at 70; *Morales*, 2003 WL 23185770, at *15.

10

**B.**    **Remaining Claims**

**1.**    **Standard of Review**

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that:  (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this standard, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362,] at 405-06 [2000]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it.  *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

11

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable in this context means "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Francis S.*, 221 F.3d at 111).

### 2.    Substance of Remaining Claims

#### a.    Ground Two

In his second ground for relief, Jackson asserts that the identification procedure utilized by law enforcement agents on November 3, 2000 was constitutionally tainted, and that the trial court's failure to suppress identification testimony at trial entitles Jackson to a new trial. Petition at pp. 5D-5F.

##### i.    Clearly Established Supreme Court Precedent

In considering a challenge to a pre-trial identification of a defendant, courts are to consider whether the pre-trial identification process created "a very substantial likelihood" of "irreparable misidentification" at the time of trial. *Manson v. Brathwaite*, 432 U.S. 98, 113-16 (1977) (internal quotation marks and citation omitted). Courts must consider the totality of the circumstances relating to the pre-trial identification, *see Neil v. Biggers*, 409 U.S. 188, 199 (1972), weighed against the corrupting effect of the suggestive identification. *Manson*, 432 U.S. at 114. In determining whether a witness' identification of a defendant is reliable, independent of unduly suggestive identification procedures, courts are to consider:

> [1] the opportunity of the witness to view the criminal at the time of
> the crime, [2] the witness' degree of attention, [3] the accuracy of the
> witness' prior description of the criminal, [4] the level of certainty
> demonstrated by the witness at the confrontation, and [5] the length
> of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.  After considering these factors, if the court concludes that a

petitioner has failed to establish that there was "a very substantial likelihood of irreparable

misidentification," the presence of some elements of untrustworthiness merely impacts the weight

of the identification, not its admissibility.  *See Manson*, 432 U.S. at 116.

### ii.    Contrary to, or Unreasonable Application of, Supreme Court Precedent

In rejecting Jackson's appellate claim which argued that the show up identification

involving Det. Severance was improper, the Third Department held:

> the showup occurred less than a mile from the crime scene, in the
> early afternoon following the attempted burglary "and in the context
> of a continuous, ongoing investigation".   Therefore, we conclude
> that the showup was reasonable.  We also find that the identification
> was not unduly suggestive.  [Jackson] stood outside an unmarked
> police car when observed by Severance.  He was not handcuffed
> and, other than a request to look at [Jackson], the officers made no
> statements which could have tainted the identification procedure.

*Jackson*, 2 A.D.3d at 895.

Since both *Biggers* and *Manson* are clearly established federal law as determined by the

Supreme Court, *see Kennaugh v. Miller*, 289 F.3d 36, 44 (2d Cir. 2002), this Court must consider

whether the Third Department's decision denying this aspect of Jackson's appeal is either contrary

to, or an unreasonable application of, the above-referenced Supreme Court authority.

Considering the *Biggers* factors in conjunction with the facts established in the criminal

matter below, the Court initially notes that the individual who observed the suspect was a trained

police officer who saw the man attempting to enter the detective's residence and whose testimony demonstrated that he closely followed the movements of Jackson as he moved around the detective's home and surrounding areas.  Next, although Jackson's physical appearance was not identical to the description of the perpetrator supplied by Det. Severance, this Court agrees with the Third Department that Jackson's appearance "matched the general description of the attempted burglary suspect." *Jackson*, 2 A.D.3d at 895.  Next, the record establishes that Det. Severance declared at the time of his identification that he was "sure" that Jackson was the individual whom the detective had earlier observed attempting to enter the residence.  Suppression Tr. at pp. 13, 37. Finally, Det. Severance positively identified Jackson as the suspect within a few hours of the attempted burglary, and it has been observed that "a delay of a few hours between the [crime] and the identification is not a basis for suppression" particularly where, as here, the individual making the identification is "an experienced law enforcement officer" who was able to observe the suspect for a period of time. *Hendricks v. Senkowski*, No. 92 Civ. 320, 1993 WL 33417, at *3 (S.D.N.Y. Feb. 4, 1993); *see also McBride v. Senkowski*, No. 98 CIV. 8663, 2002 WL 523275, at *5 (S.D.N.Y. Apr. 8, 2002) (denying habeas petition which challenged show up identification because, *inter alia*, the identification was made more than two hours after robbery).

After considering the totality of the circumstances relating to this issue, including the testimony provided by law enforcement agents at the suppression hearing, this Court concurs with the state courts' findings that Det. Severance could properly make an in-court identification of Jackson.  Since those findings are neither contrary to, nor represent an unreasonable application

of, *Manson* or *Biggers,* Jackson's second ground for relief is denied.[6]

### b.    Ground Three

In his third ground, Jackson asserts that the evidence adduced at trial was insufficient to establish his guilt of the crimes of which he was convicted.  *See* Petition at p. 5E.  He specifically claims that the description of the attempted burglary suspect did not match Jackson's appearance, and that the prosecution's failure to establish, at trial, the color of the jacket Jackson was wearing at the time he was arrested was fatal to his convictions.  *Id.* at pp. 5E-5F.  He further alleges that photocopies of the $2.00 bills Jackson was accused of stealing from the Vella household which were provided to defense counsel prior to trial demonstrate that such bills were not ripped at the corner (as alleged by Vella at trial), and that the foregoing further establishes his innocence of the crimes of which he was found guilty.

### i.    Clearly Established Supreme Court Precedent

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).  An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  A habeas petitioner claiming that there was insufficient evidence supporting a conviction

---

[6] To the extent that petitioner asserts that trial counsel was ineffective in failing to argue that the show up identification was unduly suggestive, *see* Petition at p. 6E, such claim must also be denied as meritless.

15

is only entitled to relief under 28 U.S.C. § 2254 if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319. Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984) (citing *Jackson*) (other citations omitted).

<b>ii.    Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent</b>

Jackson's initial theory in support of this ground – which attacks the identification evidence offered at trial (*see* Petition at pp. 5E-5F) – appears to overlook the fact that once it has been found that identification evidence was properly presented to the jury (as this Court has already determined *ante*), any claimed untrustworthiness relating to the identification "goes only to the identification's weight, not to its admissibility." *Dunnigan v. Keane*, 137 F.3d 117, 128 (2d Cir. 1998) (quoting *Manson*, 432 U.S. at 116). Weight of the evidence review, however, is a product of New York state statute and therefore merely a state law issue. *See* CPL § 470.15; *see also People v. Bleakley*, 69 N.Y.2d 490 (1987). It is well-established that habeas corpus review is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). As such, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial. *Glisson v. Mantello*, 287 F.Supp.2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 02Civ.0842, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003)) (collecting cases); *McBride*, 2002 WL 523275, at *4 n.2 (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).

Jackson next argues that although the jacket stolen from the residence of Vella was alleged to have been tan and brown, Inv. Teale testified at the suppression hearing that Jackson was wearing a tan and maroon jacket at the time of his arrest. Petition at p. 5F; *see also* Suppression Tr. at p. 20. Jackson claims that because the "trial record is devoid" of evidence that the jacket Jackson possessed at the time of his arrest was tan and brown, his convictions must be set aside. Petition at p. 5F.

Although Jackson correctly notes that the colors of the outer garment he was wearing when he was arrested do not specifically appear on the record, this aspect of his claim appears to overlook the fact that Det. Severance positively identified People's Exhibit 15 as "the fleece jacket that [Jackson] had on when [Det. Severance] viewed [Jackson] when the cops had him stopped." *See* Trial Tr. at pp. 55-56; *see also id*. at p. 107. Vella subsequently identified People's Exhibit 15 as the garment that had been removed from her residence without her knowledge or consent. *Id.* at pp. 192-93. Therefore, the evidence at trial clearly established that Jackson was found to be unlawfully in possession of the clothing which Vella testified had been stolen from her home.

With respect to the $2.00 bills that Jackson was accused of stealing from Vella's home, he claims that the photocopies of the $2.00 bills the prosecutor provided to defense counsel do "not appear" to have had their corners removed. *See* Petition at pp. 5F and 12A; *see also* CPL Motion at Exh. 23. Jackson notes that Vella testified that the bills which had been stolen from her home had had their corners removed, *e.g.*, Trial Tr. at p. 191, and asserts that the photocopies of the bills provided to the defense demonstrate that Jackson never possessed the $2.00 bills that were stolen from the Vella residence. *See* Petition, Ground Three.

However, the trial testimony demonstrated that People's Exhibit 16 contained the actual

17

$2.00 bills which Inv. D'Angelo observed Jackson kick underneath a desk while he was at the Colonie police station.  Trial Tr. at pp. 128-29.  During her trial testimony, Vella identified People's Exhibit 16 as the $2.00 bills that had been stolen from her house.  *Id.* at p. 191.[7]  Such evidence was properly received into evidence and strongly suggested petitioner's guilt of the crimes of which he was found guilty.

In sum, after having reviewed the evidence adduced at trial regarding the charges of which Jackson was found guilty, this Court concurs with the Appellate Division's conclusion that the prosecutor established, beyond a reasonable doubt, all of the elements necessary for the second degree burglary conviction.  *See Jackson*, 2 A.D.3d at 896-97 (discussing elements of second degree burglary in New York); *see also* N.Y. Penal Law § 140.25(2).  There was similarly ample proof presented at trial to demonstrate Jackson's guilt of the fifth degree criminal possession of stolen property charge.  *E.g.* N.Y. Penal L. §165.40.[8]  His third ground for relief must therefore be denied.

---

[7] When asked by the prosecutor how she could be certain that the $2.00 bills in the exhibit were the same bills stolen from her residence, Vella remarked that her father had previously torn the corner off *some* of the $2.00 bills he had previously given to her, and noted that *some* of the bills in People's Exhibit 16 were also missing corners.  Trial Tr. at p. 191 (emphasis added).  Vella did not testify, as Jackson appears to suggest, that *all* of the stolen bills had had at least one corner torn off.

[8] In New York, a person is guilty of criminal possession of stolen property in the fifth degree "when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."  *See* N.Y. Penal L. § 165.40.

###### c.    <u>Ground Four</u>

In his fourth ground, Jackson asserts that he received the ineffective assistance of trial counsel.  *See* Petition at p. 6A.

###### i.    <u>Clearly Established Supreme Court Precedent</u>

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

Since the *Strickland* standard is clearly established federal law, as determined by the Supreme Court of the United States, *see Bell v. Cone*, 535 U.S. 685, 693-94 (2002), this Court must determine whether the findings of the state courts which denied Jackson's ineffective assistance of trial counsel claims are contrary to, or involve an unreasonable application of, *Strickland* and its progeny.

###### ii.    <u>Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent</u>

Jackson initially argues that his trial counsel did not adequately represent Jackson's interests at the suppression hearing.  *See* Petition at p. 6A.

Jackson raised this claim in his *Coram Nobis* Application, *see Coram Nobis* Application at

pp. 8-15,[9] which the Appellate Division denied on the merits. *See* August, 2005 Order at p. 1.

In conjunction with this claim, the transcript of the suppression hearing has been reviewed. That review does not support Jackson's claim that his counsel was ineffective at that proceeding. To the contrary, the transcript reveals that defense counsel vigorously cross-examined the prosecution's witnesses at that hearing. Furthermore, following that hearing, Judge Lamont issued an order which ***granted*** a portion of the relief sought by Jackson – the trial court precluded the prosecution from entering into evidence the tangible property seized from Jackson's person on November 3, 2000. *See* May, 2001 Order at p. 10. As Judge Giardino observed in his March, 2005 Order denying Jackson's CPL Motion, that fact strongly suggests that Jackson received the ***effective*** assistance of counsel. *See* March, 2005 Order at p. 3.

Jackson next argues that his attorney's performance was deficient because he failed to bring to the jury's attention the fact that Inv. Teale and Det. Severance both testified before the grand jury that when Jackson was detained on November 3, 2000, he was wearing a tan or gray and white colored jacket, yet when Inv. Teale testified at trial, he declared that Jackson was wearing a tan and maroon colored jacket. Petition at p. 6B; *see also* Trial Tr. at p. 114. Petitioner asserts that counsel improperly failed to impeach Inv. Teale's trial testimony regarding this inconsistency, and that counsel did not adequately argue at trial that Det. Severance's trial

---

[9] Although Jackson's claims regarding trial counsel's effectiveness were more properly brought by way of a CPL § 440.10 motion, this Court notes that because the Third Department addressed the substance of the *Coram Nobis* Application in its August, 2005 Order, this Court must consider that ruling in determining the merits of Jackson's habeas petition. *E.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001).

testimony relating to this issue was unpersuasive.[10]  *Id.*

The transcript of Jackson's trial establishes that defense counsel extensively cross-examined Det. Severance about the description he provided to law enforcement agents concerning Jackson's appearance.  *See* Trial Tr. at pp. 69-71, 77-85.  Counsel also questioned Inv. Teale about the description of the suspect that was provided to him, the physical characteristics of Jackson at the time he was detained, and the differences that existed between the two.  *Id*. at pp. 111-14.[11]

As Magistrate Judge Randolph F. Treece observed in *Tolliver v. Greiner*, No. 02-CV-0570, 2005 WL 2179298 (N.D.N.Y. Sept. 8, 2005), *adopted Tolliver v. Greiner*, 2005 WL 2437021 (N.D.N.Y. Sept 30, 2005) (Kahn, J.):

> The method of cross-examination is an area of trial strategy which courts generally decline to second-guess.  *United States v. DeFeo*, 1997 WL 3259 (S.D.N.Y.), *aff'd*, 152 F.3d 921 (2d Cir.1998). The Second Circuit has consistently declined to deem counsel ineffective "notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir.1996) (citing, *inter alia*, *Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir.1986) (questioning that "opened the door" to damaging evidence not ineffectiveness) (other citations omitted); *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987) (noting that the decision "whether to engage in cross-examination" is "strategic in nature" and not a basis upon which a claim of ineffective assistance of counsel is properly based).

*Tolliver*, 2005 WL 2179298, at *7.

After having reviewed the state court record in conjunction with this theory, including the

---

[10] Petitioner further asserts that highlighting the above-described discrepancies may have also assisted Jackson's defense to the criminal possession of stolen property charge.  Petition at p. 6B.

[11] Defense counsel specifically elicited testimony from Inv. Teale which demonstrated that Jackson was wearing a cranberry and tan colored top at the time of his arrest.  Trial Tr. at p. 114.

transcripts of the cross-examinations noted above, this Court finds that Jackson has not established that the Third Department's decision denying this aspect of his ineffective assistance claim is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

Next, although Jackson now faults counsel for not introducing photocopies of some of the two dollar bills to demonstrate to the jury that the corners of those bills were not ripped (and, by implication, not stolen from Vella's home), *see* Petition at pp. 6B, 12A, this claim appears to ignore the fact that, as was noted above, the ***original*** two dollar bills that were stolen from the residence were introduced by the prosecutor against Jackson at his trial.  *See* Trial Tr. at pp. 129, 195-96.  Under New York's best evidence rule, it is clear that the prosecutor would have prevailed on his certain objection to the introduction into evidence of photocopies of bills when the originals of these bills were in evidence.  *E.g. Schozer v. William Penn Life Ins. Co. of New York*, 84 N.Y.2d 639, 643 (1994) (best evidence rule, which is meant to safeguard against, *inter alia*, mistakes that may occur in the copying process, requires the production of originals where there is a dispute concerning their contents) (citations omitted).  Defense counsel's failure to refer to photocopies of those bills at Jackson's trial was therefore entirely reasonable.

Jackson also argues that his trial attorney wrongfully failed to raise a "*Lypka* challenge" concerning the source and reliability of the information that was supplied to Inv. Teale regarding the suspect.  Petition at p. 6D.

In *Lypka*, New York's Court of Appeals held that: "[a] police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability...."  *Lypka,* 36 N.Y.2d at 213.  When the officer acts on the bulletin or

alert, "he presumptively possesses the requisite probable cause to search" because the sender's knowledge is imputed to the receiver. *Id.* at 213. However, where a challenge to the receiver's action is made on a motion to suppress, the presumption of probable cause disappears and the prosecution must demonstrate that the sender had probable cause to act. *Id.* at 213-14.

Although Jackson argues that the record is "devoid of evidence or testimony" that anyone could have properly conveyed the description of the suspect to Inv. Teale, *see* Petition at pp. 6D-6E, this assertion appears to overlook the fact that Officer Messmer testified at trial that Det. Severance had personally conveyed to Officer Messner the physical description of the perpetrator, who in turn conveyed that information to, among others, Inv. Teale. *See* Trial Tr. at pp. 96-99. Since Officer Messner, the broadcasting officer (*id.* at p. 98), plainly possessed the requisite probable cause to act on the description based upon the information he had personally received from Det. Severance, that knowledge was therefore properly imputed to Inv. Teale, and, consequently, there was no *Lypka* issue for defense counsel to properly raise. *E.g.*, *Lypka,* 36 N.Y.2d at 214 (prosecutor meets burden of proof in *Lypka* challenge where the sender of the police broadcast "possessed the requisite probable cause to act") (citations omitted).

Finally, Jackson asserts that at the suppression hearing, his trial counsel failed to highlight the differences between Jackson's actual appearance at the time of his arrest and the description of the perpetrator provided by Det. Severance to the authorities. Petition at p. 6E. Petitioner specifically asserts that counsel failed to emphasize differences such as Jackson's height, age, hairstyle and facial features, and claims that if those "egregious" disparities had been emphasized by counsel at the hearing, the identification testimony would not have been admissible at trial. Petition at p. 6E.

23

However, the transcript of the suppressing hearing establishes that defense counsel ***did***

question the witnesses at the suppression hearing about the disparities that existed between Det.

Severance's description of the perpetrator *vis-a-vis* Jackson's physical appearance.  *See*

Suppression Tr.  Additionally, in his closing argument at that proceeding, counsel argued:

> Your Honor, with respect to the description given we are talking
> about an individual in his early 20s,  five feet eleven, no mention of
> facial hair, approximately 180 pounds.  That is not my client's
> description.  Your Honor, and I would suggest the mere fact that he
> was the only black male stopped and questioned and the only black
> male shown to Detective Severance indicates a high level of
> suggestibility. And for all of those reasons, Your Honor, the
> identification ... should also be suppressed.

Suppression Tr. at pp. 51-52.  Thus, counsel was plainly aware of the disparities now cited by

Jackson, and argued – albeit it unsuccessfully – that those differences should have rendered the

identification testimony inadmissible at trial.

In sum, petitioner has not demonstrated that the denial of his ineffective assistance of trial

counsel claims by the Appellate Division was either contrary to, or represents an unreasonable

application of, *Strickland* and its progeny.  The Court therefore denies his fourth ground for relief.

### d.    Ground Five

In his final ground in support of his request for federal habeas intervention, Jackson claims

that he received the ineffective assistance of appellate counsel.  Petition, Ground Five.

### i.    Clearly Established Supreme Court Precedent

It is well-settled that the Sixth Amendment's right to the effective assistance of counsel

requires that indigents be provided with effective counsel for their first appeal as of right.

*Douglas v. California*, 372 U.S. 353, 358 (1963).  Consequently, an individual is entitled to the

effective assistance of appellate counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

The proper standard for evaluating a claim that appellate counsel was ineffective is the *Strickland* test discussed *ante*. *See Smith v. Robbins*, 528 U.S. 259, 287-89 (2000); *Penson v. Ohio*, 488 U.S. 75, 86-88 (1988).

### ii.    Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

Petitioner asserts that his appellate counsel rendered ineffective assistance because he failed to claim on appeal that Jackson had received the ineffective assistance of trial counsel. *See* Petition at pp. 7A-7B.

However, as Chief United States District Judge Norman A. Mordue has observed, where a district court has considered and rejected an ineffective assistance of trial counsel claim on habeas review:

> [A]ppellate counsel cannot be found to have provided constitutionally deficient representation by failing to assert an ineffective assistance claim relating to defense counsel. *See DeVivo v. Superintendent, Auburn Correctional Facility*, No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. Mar. 8, 2006) (citations omitted) (Kahn, J., adopting Report-Recommendation of Magistrate Judge David E. Peebles), *appeal dismissed*, *DeVivo v. Goord*, No. 06-2279-pr (2d Cir. June 13, 2007). In other words, appellate counsel cannot be found to have rendered ineffective assistance by failing to assert a meritless claim on appeal. *See Lopez v. Fischer*, No. 05 CIV.2558, 2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation below an objective standard of reasonableness, nor can petitioner show that had these claims been presented on appeal, his outcome would have been any different"); *Melenciano v. Walsh*, No. 02 CIV.9593, 2005 WL 768591, at *8 (S.D.N.Y. Apr. 6, 2005) ("[w]here the underlying claim is without merit, the claim of ineffective assistance of counsel for not raising the issue during the trial is, likewise, meritless") (citations omitted); *see also Mackenzie v. Portuondo*, 208 F.Supp.2d 302, 319 (E.D.N.Y.2002) (" '[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was

> entitled' ") (quoting *Aparicio*[], 269 F.3d [at] 99-100 & n.10 []
> (other internal quotation and citation omitted).

*Jones v. Greene*, No. 9:04-CV-0400 2007 WL 4246330, at *11 (N.D.N.Y. Nov. 28, 2007), *appeal dismissed*, *Jones v. Greene*, No. 08-0085pr (2d. Cir. Apr. 15, 2008).

As is discussed more fully *ante*, Jackson's ineffective assistance claim regarding trial counsel is meritless.  Therefore, Jackson's fifth and final ground for relief, which is premised upon appellate counsel's failure to assert an ineffective assistance of trial counsel claim on appeal, is necessarily without substance.

## III. Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in
> > which the detention complained of arises out of
> > process issued by a State court ....[12]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

---

[12] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

WHEREFORE, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

ORDERED, that Jackson's petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by electronic or regular mail, and it is further

ORDERED, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated: February 3, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge